IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3M COMPANY,                                            Case No.: _____

      Plaintiff,

v.

TAC2 GLOBAL LLC,

      Defendant.

_____/

## PLAINTIFF 3M COMPANY'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff 3M Company ("Plaintiff" or "3M"), by and through its undersigned counsel, hereby files its Complaint and Demand for Jury Trial against TAC2 Global LLC ("Defendant" or "TAC2"), and in support hereof, alleges as follows:

## NATURE OF THE ACTION

1.    This action concerns Defendant's fraudulent, deceptive, and otherwise wrongful use of Plaintiff's famous "3M" trademarks to perpetrate a price gouging scheme on unwitting consumers, including government agencies, during the global COVID-19 pandemic.

2.    Defendant further engaged in wrongful conduct by falsely representing that it has a relationship with "the 3M manufacturer" (even claiming to have "very recently contracted to become a distributor" of 3M respirators) and that "[e]very mask [TAC2] procure[s] will also be inspected and certified by 3M agents…" Defendant further claimed to have a "contract agreement with the 3M manufacturer." Defendant is not an authorized

1

distributor of any of 3M's products and "3M agents" do not work with or for Defendant, and Defendant has no contract with 3M.

3.     Throughout its history, 3M has been providing state-of-the art, industry-leading scientific and medical products to consumers worldwide under its famous 3M marks.   Based on longstanding, continuous use, consumers associate the 3M marks uniquely with 3M.   Now, more than ever, consumers are also relying on the famous 3M marks to indicate that the products offered thereunder are of the same superior quality that consumers have come to expect over the past century.   This is especially true with respect to 3M's numerous industry-leading healthcare products and personal protective equipment ("PPE"), including Plaintiff's 3M-brand N95 respirators.

4.     Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19.   To assist in the battle, 3M is working around the clock to supply healthcare workers, first responders, and critical infrastructure operators with millions of 3M-brand respirators.   Beginning in January, 3M began increasing its production of 3M-brand respirators, doubling its global output to a rate of 1.1 billion per year, or 100 million per month. This includes 35 million per month being manufactured and distributed in the United States. 3M also is investing in the capital and resources to enable it to double its respirator production capacity once again, to 2 billion globally by the end of 2020.   In the United States alone, 3M plans to be producing respirators at a rate of 50 million per month by June 2020.   And to supplement its U.S. production, 3M also has announced a plan to import 166.5 million 3M-brand respirators from 3M's production facilities overseas.   In the U.S., more than 90 percent of 3M's

respirators are going to healthcare and public health users, with the remaining deployed to other critical industries such as energy, food and pharmaceuticals. The U.S. distribution of 3M-brand respirators is being coordinated with the Federal Emergency Management Agency, which is basing allocation decisions on the most urgent needs.

5.     The demand for 3M-branded respirators has grown exponentially in response to the pandemic, and 3M has been committed to seeking to meet this demand while keeping its respirators priced fairly.  **3M has <u>not</u> increased the prices that it charges for 3M respirators as a result of the COVID-19 outbreak.**

6.     Unfortunately, any number of wrongdoers seek to exploit the current public health emergency and prey on innocent parties through a variety of scams involving 3M N95 respirators and other products in high demand.  These scams include unlawful price gouging, fake offers, counterfeiting, and other unfair and deceptive practices – all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

7.     In response to fraudulent activity, price gouging and counterfeiting related to N95 respirator masks that has spiked in the marketplace in response to the pandemic, 3M is taking an active role in combating these activities.  3M's actions include working with law enforcement authorities around the world, including the U.S. Attorney General, state Attorneys General and local authorities, and creating a "3M COVID-19 Fraud hotline" for the United States and Canada that end users and purchasers of 3M products can call for information to help detect fraud and avoid counterfeit products.  3M is also publishing information on its website to help inform the purchasing public about 3M's

3

prices and products so that they can avoid fraud.  Further information about 3M's efforts

is set forth in the 3M press release and publication attached as hereto as **Exhibits A and**

**B**.  This Complaint is another part of these efforts.

8.    Despite 3M's extensive efforts during COVID-19, unsavory characters

continue their quests to take advantage of healthcare workers, first responders, and others

in a time of need and trade off the fame of the 3M brand and marks.  Defendant is a prime

example of this unlawful behavior.

9.    On or about April 14, 2020, Defendant contacted the Florida Department of

Management Services ("DMS") Emergency Operations Center ("EOC") with an offer to

sell various PPE, including 3M-brand masks.  Defendant is not an authorized distributor of

any of 3M's products and has no right to use 3M's trademarks.  Nonetheless, to confuse

and deceive the EOC, Defendant claimed to be a distributor of certified 3M-brand, N95

Model 1860 respirators. To further the deception, Defendant claimed to have "3M NIOSH

N95 masks," a contractual relationship with 3M, and a system in which every mask would

be inspected by 3M agents.

10.    These claims were incorporated into an email and itemized quote provided

to the EOC.  Specifically, Defendant purported to offer to sell five to ten million 3M-brand

N95 masks at over 430% above 3M's list price.  This offer constituted price gouging by

any measure, including under Section 501.160(2), Florida Statutes.[1]

---

[1] Section 501.160(2), Florida Statutes states, in part:

11.     Not only does such price gouging further strain the limited resources available to combat COVID-19, but such conduct justifiably has caused public outrage which threatens imminent and irreparable harm to 3M's brand as Defendant and similar pandemic profiteers promote an improper association between 3M's marks and exploitative pricing behavior.

12.     3M does not – and will not – tolerate individuals or entities deceptively trading off the fame and goodwill of the 3M brand and marks for personal gain.  This is particularly true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global pandemic, which already has claimed tens of thousands of lives worldwide and over 1,000 lives in Florida.

13.     Accordingly, to further protect governmental actors and consumers from confusion and mistake, to reduce the amount of time and energy that government officials are forced to waste interacting with such schemes, as well as to forestall any further diminution to the 3M brand and marks' reputation, fame, and goodwill, Plaintiff brings this lawsuit against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and unfair and deceptive trade practices.  Plaintiff also seeks preliminary and

---

Upon a declaration of a state of emergency by the Governor, it is unlawful and a violation of § 501.204 for a person or her or his agent or employee to rent or sell or offer to rent or sell at an unconscionable price within the area for which the state of emergency is declared, any essential commodity including, but not limited to, supplies, services, provisions, or equipment that is necessary for consumption or use as a direct result of the emergency.

Governor Ron DeSantis declared a state of emergency on March 9, 2020. *See* Executive Order 20-52.

permanent injunctive relief.  As described below, any damages, costs, or fees recovered by Plaintiff will be donated to charitable COVID-19 relief efforts.

## PARTIES

14.     Plaintiff 3M Company is a Delaware Corporation, with its principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144.

15.     On information and belief, Defendant TAC2 Global LLC is a Florida limited liability company with its principal place of business at 7901 4th Street N, Suite 300, St. Petersburg, Florida 33702.

## JURISDICTION AND VENUE

16.     The claims for federal trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts V–VIII, *infra*, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely 15 U.S.C. § 1051 *et seq.*  Accordingly, this Court has original and subject-matter jurisdiction over Counts V–VIII, pursuant to 28 U.S.C. §§1331, 1338(a), and 15 U.S.C. §1121(a).

17.     The claims for state trademark infringement, false advertising, dilution, unfair competition, and unfair and deceptive trade practices, respectively, asserted in Counts I–IV, *infra*, arise under Florida statutory and common law, and are so related to the federal claims asserted in Counts V–VIII, *infra*, that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Counts I–IV pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

18.     This Court also has diversity jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

19.     A substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District.  Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

20.     Defendant is subject to personal jurisdiction in this District.  Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.   Plaintiff

#### A.  3M

21.     3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world.  Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and equipment.

#### B.  The 3M Brand

22.     3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more.  3M also uses its famous "3M Science. Applied to Life" slogan in connection with the promotion of its goods and services.  Notwithstanding the widespread goodwill and

resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

23.     The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, and PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and more.  As such, 3M-branded products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

**C.  The Famous "3M" Marks**

24.     Over the past century, Plaintiff has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the inset 3M design mark (together, the "3M Marks"):



25.     Over the past century, products offered under Plaintiff's 3M Marks have enjoyed enormous commercial success (including, without limitation, its 3M-brand N95 respirator).  Indeed, in 2019, alone, sales of products offered under Plaintiff's 3M Marks exceeded several hundred million USD.

26.     Over the past century, products offered under Plaintiff's 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

27.     Based on the foregoing, the general consuming public associates the 3M Marks uniquely with Plaintiff and recognizes them as identifying Plaintiff as the exclusive source of goods and services offered under the 3M Marks.  Based on the foregoing, the 3M Marks have also become famous among the general consuming public in the United States.

28.     To strengthen Plaintiff's common-law rights in and to its famous 3M Marks, Plaintiff has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); and (ii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration"). *See* **Exhibits C–D**.

29.     The '329 and '534 Registrations are valid, in effect, and on the Principal Trademark Register.

30.     The '329 and '534 Registrations are "incontestable" within the meaning of 15 U.S.C. § 1065.  Accordingly, the '329 and '534 Registrations constitute conclusive evidence of: (i) Plaintiff's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) Plaintiff's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

31.     Plaintiff's famous 3M Marks do more than identify Plaintiff as the exclusive source of goods and services offered thereunder.  Indeed, the famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards.  Now, more than ever, consumers rely on the famous 3M Marks' ability to signify that products offered under the

3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

**D.  Plaintiff's Extensive Efforts to Assist With the Battle Against COVID-19**

32.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19.  As Plaintiff states on the homepage of its website, it is "committed to getting personal protective equipment to healthcare workers":



33.     Among the PPE that 3M is providing to the heroic individuals on the front lines of the battle against COVID-19 are Plaintiff's 3M-brand N95 respirators.

34.     Inset below is an image of Plaintiff's 3M-brand, Model 1860 respirator:



35.    Authentic N95 respirators reduce exposure to airborne biological particles and liquid contamination when used appropriately.

36.    Based on the exponential increase in demand for 3M-brand N95 respirators, Plaintiff has invested the necessary capital and resources to double its global annual production of 1.1 billion 3M-brand N95 respirators.  *See* Exs. A & B.  **But 3M has *not* increased its prices**.  *See id.*

37.    Unfortunately, certain third parties do not share 3M's sense of civic responsibility during this time of crisis.  Indeed, opportunistic third parties are seeking to exploit the increased demand for Plaintiff's 3M-brand N95 respirators by offering to sell them for exorbitant prices, selling counterfeit versions of them, and accepting money for 3M-brand N95 respirators despite not having the product to sell and/or never intending to deliver the product to the unwitting buyer—in many instances, a public authority, such as the CDC, which struggles to address the enormous financial and logistical challenges presented by COVID-19.

38.    Accordingly, to protect consumers on the front lines of the COVID-19 battle from deception and inferior products, to reduce time wasted by governmental officials on scams, as well as to protect the widespread reputation and goodwill enjoyed by Plaintiff's carefully curated 3M brand, Plaintiff is working diligently with law enforcement, retail

partners, and others to combat unethical and unlawful business practices related to 3M-brand N95 respirators. For example, in late-March 2019, 3M's Chief Executive Officer, Mike Roman, sent a letter to U.S. Attorney General, William Barr, and the President of the National Governors Association, Larry Hogan of Maryland, to offer 3M's partnership in combatting price gouging. As shown in the inset image, additional examples of 3M's efforts to combat price gouging, counterfeiting, and other unlawful conduct during COVID-19 include:

    a. 3M posted on its website the list price for its 3M-brand N95 respirators so that consumers can readily identify price gouging (*See* **Exhibit E**);

    b. 3M created a form on its website that consumers can use to report suspected incidents of price gouging and counterfeiting (*See* **Exhibit F**); and

    c. 3M created a fraud "hotline" that consumers can call to report suspect incidents of price gouging and counterfeiting:



## II. Defendant's Unlawful Conduct

39. Despite Plaintiff's extensive measures to combat price gouging and counterfeiting of its 3M-brand N95 respirators, these illicit activities continue. Defendant is a prime example of this unlawful behavior, which is damaging to the 3M brand and public health.

12

40.     On or about March 31, 2020, Defendant sent an email titled *Tac2 Global – N95 Masks and Sanitizer* (the "Email") to the Logistics Section Support Director ("LSSD") of the DMS's EOC.  *See* **Exhibit G**.

41.     In the Email, Defendant falsely claimed to be a distributor of certified 3M-brand, N95 Model 1860 respirators and offered to sell them. *See id*. In the Email, Defendant included a quote (the "Quote") addressed to the Florida Department of Management Services Division of State Purchases which offered to sell five to ten million 3M-brand, N95 Model 1860 respirators for $5.50 each and various sizes of bottled hand sanitizer at highly inflated prices. *See Id*.

42.     The Quote contains a reference to the 3M-brand, N95 Model 1860 respirators that Defendant purportedly had for sale in the form "3M$^{TM}$".  *See id*.

43.     The Quote contains a series of false and misleading claims involving 3M including but not limited to the following:

    a.  That the Defendant had "further contracted to become a distributor of 3M N95 Masks.";

    b.  That Defendant's "pricing will remain fixed and transparent to 3M and their agents.";

    c.  That Defendant had a  "contract agreement with the 3M Manufacturer"; and

    d.  "Every mask we [Defendant] procure will also be inspected and certified by 3M agents prior to leaving the manufacturing facility, and we are obligated to offer these masks CIF."

44.     The Email also contains a purported certificate from the INSPEC organization that attests to the quality of the masks Defendant is selling (the "Certificate"). *See Id*.

45.     The Certificate does not show in any way that the masks Defendant offers are affiliated with 3M or safe to use.

46.     The Email also includes attachments containing specifications of the hand sanitizer and screenshots of Florida business registrations (the "Attachments").

47.     Upon information and belief, Defendant's use of the 3M mark and invocation of 3M's name in the Quote and the inclusion of the Certificate and Attachments were intended to mislead the EOC into believing that Defendant was an authorized distributor of Plaintiff's products and/or otherwise had an association or affiliation with Plaintiff and its products. Under the guise of appearing affiliated with 3M, Defendant attempted to deceive consumers into purchasing masks at highly inflated prices. Defendant is not, and never has been, an authorized distributor or vendor of 3M's products. Defendant also does not have, and has never had, an association or affiliation with Plaintiff.

48.     Another equally detestable element of Defendant's unlawful conduct is price gouging. Defendant's quote of $5.50 per 3M-brand, N95 Model 1860 respirator is more than 430% over 3M's suggested list price of $1.27 per respirator. *See* Ex. C.

49.     The mere association of 3M's valuable brand with such shameless price gouging harms the brand, not to mention its more serious threat to public health agencies that are under strain in the midst of a worldwide pandemic.

50.     Based on the foregoing, Plaintiff seeks relief against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and deceptive acts and business practices.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of Florida's Unfair and Deceptive
Trade Practices Act, § 501.201 *et seq.* ("FDUTPA")**

51.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

52.     Plaintiff brings this Count I under Section 501.201 *et seq.*, Florida Statutes.

53.     Defendant's wrongful conduct, including unauthorized use of the 3M Marks in the Email and Quote, with the intent of confusing and misleading consumers, including the DEM and EOC, into believing that Defendant is an authorized distributor of 3M products, and that Defendant had genuine 3M-brand products for sale, constitutes deceptive trade practices under FDUTPA.

54.     Defendant's wrongful conduct is made even more reprehensible because of Defendant's attempt to exploit a global pandemic for profit, while posing a serious and direct threat to the health and safety of the general public due to the potential misallocation of valuable resources that are necessary to fight the COVID-19 pandemic and protect health care professionals who are risking their own health and safety fighting the pandemic.

55.     Plaintiff has suffered, and will continue to suffer, irreparable harm as a direct and proximate result of Defendant's bad acts and the conduct complained of herein.

56.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages

and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT II

### Trademark Infringement Under § 495.131, Florida Statutes

57.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

58.    Plaintiff brings this Count II under Section 495.131, Florida Statutes.

59.    Plaintiff is the exclusive owner of the 3M Marks.

60.    Plaintiff has the exclusive right to use the 3M Marks in commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand products, including N95 respirators.

61.    Defendant is unlawfully using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators, or counterfeits thereof, including, for example, in the Email and Quote.

62.    Plaintiff has not authorized Defendant to use its famous 3M Marks.

63.    Based on Plaintiff's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of Plaintiff's 3M Marks, Defendant had actual and constructive knowledge of Plaintiff's superior rights in and to the 3M Marks when Defendant began using the 3M Marks as part of its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

64.    Upon information and belief, Defendant adopted and uses the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the

extensive consumer goodwill, reputation, fame, and commercial success of products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

65.     Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of Plaintiff's 3M Marks, to which Defendant is not entitled at law or in equity.

66.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health. Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

67.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT III

### Dilution Under § 495.151, Florida Statutes

68.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

69.     Plaintiff brings this Count III under Section 495.151, Florida Statutes.

70.     Plaintiff's 3M Marks are indisputably famous.

71.     Plaintiff's 3M Marks were famous at the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including 3M-brand N95 respirators.

72.     Defendant's use of the famous 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including 3M-brand N95 respirators, has, and is likely to continue to, dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be severely diminished.

73.     Defendant's use of the famous 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including 3M-brand N95 respirators, in connection with Defendant's unlawful price gouging scheme during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks, including, without limitation, Plaintiff's 3M-brand N95 respirators, will be severely diminished.

74.     Defendant's unauthorized and unlawful use of the 3M Marks violates Section 495.151, Florida Statutes.

75.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT IV

### Unfair Competition Under Florida Common Law

76.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

77.     Plaintiff brings this Count IV under Florida Common Law.

78.     Plaintiff has the exclusive right to use the 3M Marks in commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand products, including N95 respirators.

79.     Defendant's use of the 3M Marks in commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand products, including N95 respirators is likely to confuse consumers, including government agencies, and mislead them into believing that Defendant is associated with Plaintiff, is an authorized distributor for Plaintiff, and/or has available for sale genuine 3M-brand products.

80.     Plaintiff has suffered, and will continue to suffer, irreparable harm as a direct and proximate result of Defendant's wrongful conduct.

19

81.     Plaintiff has no adequate remedy at all.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT V

### False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)) (Defendant's "Email and Quote")

82.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

83.     Count V is a claim for false and deceptive advertising under 15 U.S.C§ 1125(a)(1)(B).

84.     The statements that Defendant made in its Email and Quote constitute commercial advertising and/or commercial promotion.

85.     The statements that Defendant made in its Email and Quote contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendant and/or the products that Defendant allegedly had available for sale.

86.     The statements that Defendant made in its Email and Quote contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Plaintiff and Plaintiff's 3M-brand products, including, without limitation, Plaintiff's 3M-brand N95 respirators.

20

87.     Defendant placed its Email and Quote into interstate commerce by, inter alia, sending it to the Florida Department of Emergency Management email account.

88.     Defendant's Email and Quote directly and/or proximately caused and/or is likely to cause Plaintiff to suffer harm in the form of lost sales (including, without limitation, lost sales of Plaintiff's 3M-brand N95 respirators), as well as irreparable diminution to the 3M brand and 3M Marks' reputation, fame, and goodwill.

89.     Upon information and belief, Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

90.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health. Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

91.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages

and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VI

**Trademark Infringement Under Section 32(1) of the
Lanham Act, 15 U.S.C. § 1114(1))
(Infringement of the Federally Registered 3M Marks)**

92.      Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

93.      Plaintiff brings this Count VI under 15 U.S.C. § 1114.

94.      Plaintiff is the exclusive owner of each of the federally registered 3M Marks.

95.      Plaintiff has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand N95 respirators.

96.      Plaintiff's exclusive rights in and to each of the 3M Marks predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

97.      Both of the 3M Marks (i.e., the 3M standard character word mark and the 3M design mark) are fanciful - when used for respirators and, therefore, are inherently distinctive.

98.      Both of the 3M Marks identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

99. Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators, including, for example, in the Quote.

100. Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, likely to cause and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant is 3M, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

101. Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, is likely to cause and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

102. Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, is likely to cause and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered under a license from, 3M or vice versa.

103. Plaintiff has not consented to the use of its famous 3M Marks by Defendant.

104. Based on Plaintiff's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of Plaintiff's 3M Marks,

Defendant had actual and constructive knowledge of Plaintiff's superior rights in and to the 3M Marks when Defendant began using the 3M Marks as part of its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

105.    Upon information and belief, Defendant adopted and uses the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, fame, and commercial success of products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

106.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of Plaintiff's 3M Marks, to which Defendant is not entitled at law or in equity.

107.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).  Defendant's acts of trademark infringement are willful.

108.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health.

Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

109.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VII

**Unfair Competition, False Endorsement, False Association,
and False Designation of Origin Under Section 43(a)(1)(A)
of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)) (Use of the 3M Marks)**

110.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

111.    Count VII is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

112.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

113.    Upon information and belief, Defendant's use of Plaintiff's famous 3M Marks to advertise, market, offer for sale, and/or sell purported 3M-brand N95 respirators to consumers at exorbitant prices, in general, and during a global pandemic such as

COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

114.    Defendant has also falsely held itself and its affiliates out to be an agent of and/or authorized by Plaintiff to sell and/or distribute 3M-branded products, when this is not the case.

115.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

116.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VIII

### Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)) (Dilution of the Famous 3M Marks)

117.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 50 above as though fully set forth herein.

118.    Count VIII is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

119.    Plaintiff's 3M Marks were famous among the general consuming public before and at the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators).

26

120.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be whittled away.

121.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that famous the 3M Marks' ability to identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators) will be whittled away.

122.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators), will be whittled away.

123.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the

distinctive quality of the famous 3M Marks, such that Plaintiff's exclusive association with the famous 3M Marks will be blurred.

124.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

125.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health. Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

126.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendant's unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R.

Civ. P. 38(b).

Dated: April 30, 2020                        MCDERMOTT WILL & EMERY LLP

                                             By:   */s/ Joseph M. Wasserkrug*
                                                   Joseph M. Wasserkrug
                                                   Florida Bar No.: 112274
                                                   jwasserkrug@mwe.com
                                                   333 SE 2nd Avenue, Suite 4500
                                                   Miami, FL 33131-4336
                                                   T: 305.347.6501 | F: 305.675.8403

                                                   Michael W. Weaver
                                                   Illinois Bar No.: 6291021
                                                   *(Application for admission pro hac vice*
                                                   *forthcoming)*
                                                   mweaver@mwe.com
                                                   444 W. Lake Street, Suite 4000
                                                   Chicago, IL 60606-0029
                                                   T: 312.984.5820 | F: 312.277.2972

DM_US 168192645-3.099922.0012

29