UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3M COMPANY

    *Plaintiff,*

v.

    CASE NO. 8:20-cv-1003-T-35CPT

TAC2 GLOBAL LLC

    *Defendant.*

_____/

## DECLARATION OF DEREK MCAFEE

I, Derek McAfee, pursuant to 28 U.S.C. § 1746, and upon penalty of perjury, declare as follows:

1. My name is Derek McAfee, I am over the age of 21 and am qualified to make this Declaration. I am a resident of the State of Florida. I declare under penalty of perjury that the statements herein are true and correct and are within my personal knowledge.

2. I am a principal of Tac2 Global LLC ("Tac2") and have been personally involved in the business raised in 3M's lawsuit against Tac2. Tac2 specializes in logistics and procurement and its team members have years of experience in this area.

3. Tac2's reputation and business has been damaged by this lawsuit. Tac2 is a veteran-owned small business and government contractor. Tac2 has always done business in an honest way, has provided its customers full transparency, and has never sought to take advantage of the current pandemic. Tac2 is concerned that this lawsuit, however, is as much a "PR" stunt as anything, or it is an attempt by 3M to monopolize the market for N95 masks, which Tac2 finds unfair and wrong. The facts outlined below, which 3M would have learned had it reached out prior to filing suit, show that Tac2 has taken every conceivable step to ensure that it does business in a competitive, moral way without stepping on 3M's rights.

4. On or about Friday May 8, 2020 at approximately 2:30 PM, counsel for 3M sent an email to me with a copy of 3M's Motion for Temporary Restraining Order and Preliminary Injunction, and the Court's order denying *ex parte* relief because we did not have notice of the motion.

5. On or about 9:30 AM, Monday, May 11, 2020, I received an email from 3M's counsel with this Court's order from Friday, May 8, 2020, informing me of a hearing that is to take place tomorrow, Tuesday, May 12, 2020, at 10:00 a.m. I did not have notice of this hearing prior to receiving this email from 3M's counsel Monday morning. I see that it contained an Order that was issued by the Court last Friday. I did not have notice of it when it was filed, nor did my counsel (to the best of my knowledge).

6. I have reviewed the Complaint and the request for a Temporary Restraining Order and Motion for Preliminary Injunction filed against Tac2.

7. The allegations related to price gouging are false. Tac2 has contracted for a gross margin of approximately 10%. This 10% must cover Tac2's expenses such as salaries, logistics and shipping to the final destination, bank and payment fees, escrow fees, and intermediary fees, among other things. This leaves Tac2 around a 5% margin left to pay its sales' representatives, customer representatives, and itself. While the retail price in the market of $5.49-5.50 may appear higher than what 3M purports as its "list price," 3M's constrained production has created a market for importing 3M masks that are manufactured outside the United States because they come faster and customers need masks *now*.

8. The price initially charged to Tac2 by the supplier of the product was $4.965 per mask. Tac2 has expressed to customers that if we were able to obtain the masks at a lower price in the future, Tac2 would pass those savings on to the customer in full. I do not know what Tac2's supplier pays for the product. When one adds-in the upstream supply-chain mark ups both for things such as insurance, shipping and logistics, as well as their own profit margins, the price can indeed appear inflated. However, the inflation is neither Tac2's

intent nor is it attributable to Tac2, and Tac2 is not the beneficiary of the supposedly inflated price.

9. Furthermore, Tac2 is only selling to the end-user of the products and has obtained representations from its customers that they will not further mark up the product or resell the product.

10. The allegations related to misrepresentations about Tac2 selling counterfeit or non-existent 3M products, are categorically false. Tac2 is reselling genuine 3M N95 masks pursuant to the following:

   a. Tac2 has the contractual right or opportunity to sell 3M N95 Surgical Masks. Tac2 entered into a "Master Purchase Agreement" with a third-party procurement company (the "MPA"). Pursuant to the MPA, Tac2's third-party procurement company ("Supplier") "represents and warrants that all product purchased from the Supplier is bona-fide 3M product and not a forgery or counterfeit, and that it complies with 3M Health Care Particulate Respirator and Surgical Mask 1860 and/or1826 3PLY masks" (as the case may be). Therefore, Tac2's representations to its potential customers that it is selling or distributing genuine 3M masks is a true statement.

   b. The Supplier has represented to Tac2 that it has the right to purchase one billion 3M N95 Surgical Masks from a European distributor who has access to and/or contractual rights to allocations from 3M factories in Europe.

   c. Tac2 and its Supplier are under non-disclosure non-circumvention agreements that protect the MPA and the identities of its supply chain. Furthermore, Tac2's supply chain is a trade secret that it protects with its own customers via a Non-Disclosure and Non-Circumvention agreement. Therefore, publicly disclosing the supply chain in these proceedings without being able to keep them private and confidential would be devastating to Tac2's business and the rights of its upstream suppliers.

   d. Because Tac2 warranties to its customers that it is not selling counterfeits, Tac2 demanded certain rights, representations and warranties because of the stories and concerns that customers expressed about counterfeit goods, and about empty warehouses that used to be full. Wary of this scheme, Tac2 built protections into the MPA including the representations and warranties referred to above.

   e. In addition to the MPA's warranties to Tac2 that the masks are genuine 3M product, Tac2 has the right to conduct both pre-shipment and post-shipment inspections.

   f. Further, under the MPA and its purchase orders Tac2 has no obligation to pay for the masks unless they are genuine and until (a) the Supplier provides verified SGS Reports which identify the masks being shipped, and which are supposed to set

forth that the masks are 3M masks and not counterfeit; and (b) until Tac2 has, at its election, conducted an inspection after the masks arrive in the United States to verify their authenticity and to ensure that what was inspected and certified pre-shipment in Europe is what arrived in the U.S.

g. Tac2 is only able to purchase the masks through an irrevocable Letter of Credit, that is transferable, and that is sent via the MT700 Swift format. The Letter of Credit has conditions before release of funds which include both the pre-shipment and post-arrival inspections specified above. This protects Tac2 and our customers whose money is on the line.

h. Therefore, Tac2 has taken reasonable precautions to ensure that it does not put mislabeled counterfeit 3M masks into the stream of commerce. Tac2 would not knowingly do so and has no interest in doing so.

11. The allegations related to the representations made by Tac2 regarding its relationship to 3M are taken out of context. To the best of my personal knowledge, Tac2 has not represented that it has a direct contract as an authorized distributor with 3M or is licensed by or certified by 3M. If statements by Tac2 were misunderstood or caused confusion then Tac2 would have immediately agreed to correct any such representations had they been brought to Tac2's attention first, or had 3M sent a cease and desist letter informing Tac2 of any such statements.

12. Tac2 has conducted due diligence through multiple phone conversations, its internal research, the representations and warranties in its MPA and other written representations from its Supplier that the product Tac2 is procuring and selling is genuine 3M product. I have not yet seen any reason to doubt these claims.

13. Tac2 has been able to procure genuine 3M N95 masks through its connections and Tac2 has a right to resell 3M N95 masks in the marketplace. Tac2 is performing a much needed service to its customers who are in need of the product and have been unable to procure it directly from 3M.

14. Tac2 has ongoing transactions with customers in progress. These are legitimate sales transactions negotiated at arm's length with Tac2's customers who are in need

of the N95 masks being supplied by Tac2. They have repeatedly reiterated to us the need of the masks now.

15. A broad injunction prohibiting Tac2 from completing its ongoing purchase orders would result in significant monetary damage to Tac2. Moreover, it would result in irreparable harm to Tac2's customers who are relying on the delivery of the N95 masks in reliance on their agreements with Tac2.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed the 11th day of May, 2020.

*[signature]*
DEREK MCAFEE