UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3M COMPANY

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　CASE NO. 8:20-cv-1003-T-35CPT

TAC2 GLOBAL LLC

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

Defendant, TAC2 GLOBAL LLC, by and through its undersigned counsel, files its Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum of Law and states as follows:

**I.    INTRODUCTION**

This case involves Plaintiff, 3M COMPANY ("3M") attempting to monopolize the secondary market for its products by using its significant financial resources to eliminate competition from resellers of its products.

Plaintiff seeks to commandeer the machinery of this Court to prevent the resale of 3M brand N95 respirators by the Defendant TAC2 GLOBAL, LLC ("TAC2"). This Court has previously concluded that Plaintiff failed to prove a majority of the factual allegations set forth in their Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") (D.E. 25) Plaintiff will not be able to prove these allegations at the subsequent hearing on the Motion for a preliminary injunction because there is no evidence that the allegations are true—and for

good reason: they aren't. Plaintiff has further failed to state any viable claim against TAC2 and Plaintiff cannot establish the elements necessary to support the entry of a preliminary injunction.

## II. BACKGROUND FACTS

The background facts are largely set forth in the Declaration of Derek McAfee, a principal of TAC2. (D.E. 20) TAC2 has a contract with a supplier of genuine 3M N95 respirators (the "masks") to purchase certain quantities of masks. The supplier has represented to TAC2 that it had a contractual right to purchase a certain number of masks from an authorized 3M distributor and warranted to TAC2 in writing that any masks it supplies are genuine 3M masks. (D.E. 20) TAC2 has only marked up its product 10% above the contract price charged by its supplier and is not engaged in price gouging. (D.E. 20).

The only evidence offered by Plaintiff to prove its allegations is an email sent to the Florida Emergency Operations Center ("EOC") with a quote from TAC2 for 3M N95 masks. (D.E. 9-7 p. 2-4). As was discussed at the hearing on the Temporary Restraining Order ("TRO") TAC2 contends that it never intended to convey that it, itself, was directly affiliated with 3M, although admittedly in hindsight its email and letter could have been worded more precisely to reflect that TAC2 was a reseller of the masks and not an authorized distributor directly contracted with 3M.

In response to this, the Court entered the TRO which prevents TAC2 from holding itself out to consumers and/or the public as having been authorized by 3M as an approved or contracted distributor of 3M-brand products. (D.E. 25 ¶ 1) The TRO also provides that TAC2 is not prevented from representing to potential customers that it has a supplier of 3M brand products that has represented and warranted to Defendant that the products are genuine. (D.E. 25 ¶ 1) TAC2 is not contesting this restriction and has every intention of following the restriction in paragraph 1 of the TRO going forward. However, TAC2 objects to the TRO being converted to a preliminary

injunction in this action because as set out in more detail below, TAC2 does not believe that Plaintiff can satisfy the elements of a preliminary injunction, in particular the requirement of proving a substantial likelihood of success on the merits or the existence of irreparable harm. If any preliminary injunction is issued it should be limited to the language in paragraph 1 of the TRO.

Further, TAC2 objects to the continuation of 3M's inspection rights in the TRO and any other restriction Plaintiff would attempt to have inserted into a preliminary injunction against TAC2 because the additional restrictions Plaintiff seeks are not supported by the evidence and are simply designed to squash legitimate competition in the marketplace.

TAC2 has relied on its written contract with its supplier, and verbal and written communications from its supplier in determining that the supplier is a legitimate source of 3M masks. TAC2 has never intended or knowingly made any misrepresentations about its ability to deliver genuine 3M masks. (*See*, *Supplemental Declaration of Derek McAfee* D.E. 33)

TAC2's current customers that are awaiting TAC2's delivery of masks are aware of this lawsuit, yet these customers have not cancelled their order under some misapprehension that TAC2 was a reseller versus an "authorized" distributor—strongly suggesting that TAC2's relationship to 3M was not material so long as the end product was real 3M product. (D.E. 33)

On the other hand, although Mr. McAfee admits that there were a few similar letters to the one attached to the Complaint sent to other government agencies, no sales resulted from those similar letters. (D.E. 33) This further reinforces the fact that customers were not swayed one way or the other by TAC2's alleged misrepresentation, either those customers did not believe it, did not care, or were driven by market factors such as price.

The only sales TAC2 have contracted for to date are sales to two private hospitals, neither of which received a letter like the one attached to the Plaintiff's Complaint. (D.E. 33). Thus, there

has not been any instance where TAC2 closed a sale of 3M masks based on any representation that TAC2 was an authorized distributor of 3M. The other representations made in the email relied upon by Plaintiff in its Motion were true statements in that TAC2 is offering a genuine 3M product for sale and as such it is inspected by 3M prior to it leaving the 3M manufacturer, further it is a true statement that 3M is aware of the pricing.

3M has not offered any evidence that contradicts Mr. McAfee's testimony as to the price TAC2 is being charged for the masks. In addition, 3M has not offered any evidence or testimony that no 3M authorized distributors have changed their prices since COVID-19 prompted certain government agencies to declare a state of emergency. There has been no evidence presented as to the history of 3M's prices for the masks or the prices charged by 3M's authorized distributors domestic and abroad. Nor would these be relevant in the secondary market.

### III. ADDITIONAL DEVELOPMENTS SINCE THE TRO HEARING

As discussed at the hearing, TAC2 secured and was expecting a shipment to fill two different customer orders (private hospitals) of 1.15 million masks whereby TAC2 would see a profit of approximately $500,00 to $600,000. (D.E. 33) In addition, TAC2 had other prospective customers that it could have secured additional orders from once TAC2 had successfully completed these first orders and its customers were satisfied with the product. (D.E. 33) In order to make sure TAC2's own supplier was delivering legitimate product – and so as to not further incur potential liability in this lawsuit-- TAC2 offered to provide 3M inspection rights which were granted in the TRO. As of the date of this response those masks have not yet been delivered and no inspections have occurred. (D. E. 33)

However, as far as TAC2 knows, 3M USA is well aware of TAC2's legitimacy. (See, D.E. 33) Thus, not only is there no need for any part of the TRO to live on, there should be no need for

3M to inspect the masks as provided for in the TRO and no need to include any such inspection rights in a preliminary injunction should one be entered by the Court.

According to TAC2's supplier, the 3M distributor overseas from whom the masks were to be sourced was prevented from importing the masks into the U.S. based on 3M's rules. (D.E. 33) However, because of the supplier's contractual rights, it was able to secure TAC2's order from a 3M domestic manufacturing facility via 3M's Distribution Network. (D.E. 33) TAC2's supplier was invited by 3M to enter into direct agreements to fill TAC2's order, and 3M USA would control the identification and delivery of the 3M masks directly from a plant in Missouri, and potentially a plant in Miami (where 1860S masks are manufactured). (D.E. 33)

As part of this process, last weekend, 3M demanded confirming letters from TAC2's customers which were to be addressed to 3M, acknowledging in writing their order with TAC2. (D.E. 33) This process has caused additional time and effort by TAC2 and has delayed delivery of the masks for at least two weeks. TAC2 provided these signed letters to its supplier to provide to 3M, and TAC2's counsel has provided copies of these letters to 3M's counsel under a Confidentiality Stipulation filed with the Court (D.E. 33 )

Further, TAC2's customer advised that it was able to confirm directly with 3M representative, Bill Alm that its order appeared to be in the system and was being processed, but shortly after this call Mr. Alm called back TAC2's customer with other members of 3M on a conference call. (D.E. 33) During this second call, the 3M representatives stated they actually could not confirm or deny the status of the customer's order and advised the customer that it could and should order products directly through 3M. (D.E. 33)

TAC2 has relayed this information to counsel for 3M in an effort to get clarification from 3M as to its knowledge of TAC2's order with its supplier. (D.E. 33). The name of TAC2's

5

supplier has been provided to 3M under a Confidentiality Stipulation. (D.E. 33) Further, TAC2 has requested the depositions of Mr. Alm and Cory Kann, another 3M representative on the call that was identified by TAC2's customer. TAC2 has relied on its supplier's representations about the cause of the delay of TAC2's order which the supplier insists has been caused by 3M. (D.E. 33)

Further discovery is necessary to determine if 3M has specifically targeted TAC2's order as a result of this litigation or if the delay is based on legitimate reasons. Regardless of the cause of the delay, 3M's use of TAC2's supplier and customer information to unjustifiably attempt to circumvent TAC2's sale to its customer by contacting the customer directly is tortious interference and is clearly part of 3M's grand plan to monopolize the market in ways not permitted by law. Moreover, 3M has a duty to withdraw the allegations in its Complaint and Motion that allege TAC2 is attempting to sell counterfeit or non-existent 3M products when 3M has direct knowledge that TAC2's orders are in progress with 3M, and as such the product is neither counterfeit nor non-existent.

3M obviously has resources that far exceed the resources of TAC2. Now that 3M has the information supplied by TAC2 it should easily be able to confirm or deny the legitimacy of TAC2's order and its supplier. TAC2 has repeatedly advised this Court and 3M's counsel that it has no desire to sell counterfeit or non-existent goods as its own money and reputation are at stake. At this point it appears 3M's legal filings are designed to defeat TAC2's ability to continue its business as a reseller of 3M products thereby shutting down legitimate competition rather than any real concern for counterfeit or non-existent products being sold. 3M has not shown that it has been harmed in any way by TAC2's behavior. 3M cannot show that TAC2 ever closed a sale with any customer as a result of a representation that TAC2 was an authorized 3M distributor. Moreover,

3M cannot show that TAC2 has knowingly attempted to sell or ever sold counterfeit 3M products or that TAC2 knowingly attempted to sell or ever sold product that didn't exist. Therefore, the TRO should be allowed to expire and 3M's Motion for a preliminary injunction should be denied in its entirety.

    **IV.    PLAINTIFF CANNOT ESTABLISH THE ELEMENTS NECESSARY FOR PRELIMINARY INJUNCTIVE RELIEF.**

A district court may grant a preliminary injunction only if the movant establishes the following: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008)(quoting, *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.,* 299 F.3d 1242, 1246 (11th Cir.2002)); *Nitro Leisure Products, LLC v. Ascushnet Co.,* 341 F.3d 1356 (Fed. Cir. 2003).

    **A. PLAINTIFF HAS FAILED TO SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiff has filed an Eight Count complaint asserting the following causes of action:, Violation of Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA"); Trademark Infringement Under Fla. Stat. §495.131; Dilution under Fla. Stat. §495.151; Unfair Competition under Florida Common Law; False Advertising Under the Lanham Act; Trademark Infringement under the Lanham Act; Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under the Lanham Act; and Trademark Dilution under the Lanham Act.

The key issue in determining whether a preliminary injunction should issue on a trademark infringement claim is whether a plaintiff is likely to prevail on the merits.

*Glen Raven Mills, Inc. v. Ramada Int'l, Inc.,* 852 F. Supp. 1544, 1547 (M.D. Fla. 1994). Plaintiff's Complaint fails to state a cause of action for any of the above stated claims. Therefore, Plaintiff cannot establish a likelihood of success on the merits. Even if Plaintiff's Complaint were able to state a claim for one or more of the alleged causes of action Plaintiff has failed to establish the facts necessary to support a finding of likelihood of success on the merits.

Plaintiff's claims under the Lanham Act fail because "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1023 (2nd Cir. 1989). Consumers are not confused as to the origin of the goods as a result of a resale of genuine goods. This is referred to as the "first sale" or "exhaustion" doctrine, because the trademark protections are exhausted once the trademark owner authorizes the first sale of the product into commerce. *Davidoff &CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1301-1302 (11th Cir. 2001). The crux of a trademark infringement claim is the act of knowingly passing off a product that has different characteristics as the trademark owner's product and therefore the unauthorized sale of genuine products will not be considered trademark infringement. *Wellnext, LLC v. OVM, LLC,* 2018 WL 7048128 (S.D. Fla. 2018) (dismissing trademark infringement claim for failure to state a cause of action due to first sale doctrine).

Plaintiff attempts to avoid the first sale doctrine by making allegations that TAC2 is attempting to sell counterfeit or non-existent goods. (D.E. 1, 8) However, Plaintiff has not plead this with particularity or provided any evidence that these allegations are factually accurate. The Declarations filed by Plaintiff in support of the Motion do not prove that TAC2 has knowingly offered for sale or sold counterfeit or non-existent products. (D.E. 9, 10)

In addition, Plaintiff does not make any allegations that would fall within an exception to the first sale doctrine. The first sale doctrine will not apply if the alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner. *Davidoff &CIE, S.A.,* 263 F.3d at 1301-1302. In the instant case there are no such allegations in the Complaint or the Motion, rather the allegation is just a conclusory, unsupported statement that the 3M masks offered by TAC2 for resell are counterfeit or non-existent. (D.E. 1, 8, 9, 10)

Plaintiff's counsel represented at the TRO hearing that 3M understands and acknowledges that merely reselling 3M's genuine products is not actionable and cannot be enjoined. Further, 3M concedes in its Motion that the analysis of trademark infringement and dilution claims is the same under Florida and federal law. (D.E. 8 p. 11, 15) *See, Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.,* 91 F.Supp. 3d 1265, 1288 (S.D. Fla. 2015) Therefore, the first sale doctrine bars Plaintiff's federal and state claims.

Furthermore, 3M's allegation that TAC2 misrepresented itself as an authorized 3M distributor cannot, by itself, support a trademark infringement claim. *See, Brain Pharma, LLC v. Scalini,* 858 F. Supp. 2d 1349, 1354 (S.D. Fla. 2012)("Even drawing all reasonable inferences in Plaintiff's favor, the mere allegation that Allstarhealth misrepresented that it was an authorized BPI agent cannot support a trademark infringement claim."). The "first sale" doctrine is not made inapplicable just because consumers erroneously believe a reseller is authorized by or affiliated with the manufacturer. *Sebastian Intern., Inc. v. Longs Drug Stores Corp.,* 53 F3d 1073, 1075-1076 (9th Cir. 1995). TAC2 has never used 3M's trademark for anything other than to represent that it was selling a 3M branded product. Further, as set out above, no sales were ever closed based on the letter attached to the Complaint or similar letters, and the customers that did contract

with TAC2 are well aware that TAC2 is a reseller and not an authorized distributer of 3M. (D.E. 33). Thus, no actual confusion has even been shown.

Plaintiff's allegations of price gouging do not save its trademark infringement claims. Plaintiff has failed to establish any evidence that TAC2 has committed price gouging or that said price gouging has been attributed to 3M by Defendant or any consumers. Further, 3M has not offered any evidence that all its authorized distributors world-wide are not selling masks at rates higher than the suggested retail price stated in its Motion. TAC2 has offered evidence that can justify its price based on supply and demand, market trends and the price it is paying to its supplier. (D.E. 20 ¶ 7) TAC2 is only marking up the products it is selling by 10% and TAC2 is not benefitting from any increased price (D.E. 20 ¶ 7)

The Florida price gouging statute provides that it is not price gouging if "the increase in the amount charged is attributable to additional costs incurred in connection with the rental or sale of the commodity ….. or regional, national or international market trends." Fla. Stat. §501.160 (2019). The mere fact that TAC2 is selling genuine 3M goods for more than 3M's suggested retail price does not prove price gouging under the Florida statute or trademark infringement. *See e.g., Brain Pharma, LLC v. Scalini,* 858 F. Supp. 2d at 1354 (holding that selling *genuine* trademarked products at a discount does not constitute trademark infringement or defeat application of the first sale doctrine).

The first sale doctrine likewise defeats Plaintiff's claims for Unfair Competition and False Designation of Origin and Trademark Dilution under both federal and Florida law. *Id.* The mere resale of genuine trademarked products cannot support a claim for unfair competition or false designation of origin. *Id.* at 1356. Consumers are not confused about the origin of the goods if they are genuine goods.

Similarly, Plaintiff's trademark dilution claims are not supported by the evidence. 3M has failed to effectively establish that its mark is famous which is an element of a trademark dilution claim. While the 3M brand may be well known in the industrial and medical community, and it may have grown in recognition during the global pandemic, it does not rise to the level of a famous mark. A mark is considered famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. 15 U.S.C. § 1125(c)(2)(A). Trademark dilution claims are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Brain Pharma, LLC,* 858 F. Supp. 2d at 1357 (*quoting, Dahon N. Am., Inc. v. Hon,* 2012 WL 1413681, at *9 (C.D.Cal. 2012).

Moreover, the mere selling of genuine goods at a discounted price cannot constitute dilution. *Id.* at 1358. Likewise, the mere selling or offering for resale genuine goods at a higher price would not constitute dilution. A dilution claim is based on blurring, which involves a diminution in the uniqueness or individuality of a mark because of its use on unrelated goods, and tarnishing occurs when a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.' *Id.* at 1359 (quoting *Scott Fetzer Co. v. House of Vacuums, Inc.,* 381 F.3d 477, 489 (5th Cir. 2004). There is no allegation that TAC2 has used the 3M mark to sell unrelated products.

Plaintiff has failed to show a substantial likelihood of success on the merits of its federal trademark and unfair competition claims. Because Plaintiff's state claims are subject to the same pleading and proof standard as its federal claims, Plaintiff's state claims must also fail. *See, Int'l Univ. Bd. of Trustees,* 91 F.Supp. 3d at 1288; *Brain Pharma, LLC,* 858 F. Supp. 2d at 1359.

### B. PLANTIFF HAS FAILED TO SHOW IRREPARABLE HARM

Plaintiff's Motion states that a TRO and a subsequent preliminary injunction are necessary "to prevent Defendant from continuing to fraudulently induce consumers into buying potentially unsafe, counterfeit, and/or non-existent PPE at exorbitant prices during a global pandemic." However, Plaintiff has failed to provide, nor can Plaintiff provide, any evidence that TAC2 ever sold or knowingly attempted to sell a counterfeit or non-existent product. To the contrary, TAC2 has provided evidence that it has a contract with a supplier of genuine 3M masks with accompanying representations and warranties. (D.E. 33, Ex. A) Further, TAC2 has provided evidence that 3M is aware of TAC2's legitimate orders within its own distribution and supply chain. (D.E. 33)

Plaintiff insists in its Motion that "3M will suffer immediate and irreparable injury if TAC2 is permitted to further use 3M marks to sell counterfeit and/or non-existent goods to consumers." However, as evident at the TRO hearing and as shown by the Declarations of Derek McAfee Plaintiff has no evidence that the products TAC2 has been attempting to sell are counterfeit or non-existent. In fact, all evidence suggests the contrary, that TAC2 is offering for sale genuine 3M products and Plaintiff has no right to enjoin TAC2's lawful resale of the products. (D.E. 20, 33 Ex. A) Further, 3M has not offered any evidence that suggests TAC2 engaged in price gouging or that TAC2's pricing has caused any irreparable injury to 3M. "To establish irreparable injury, a movant must show that it will suffer an injury that cannot be adequately compensated if, at some later point in time, it prevails on the merits of the case." *Glen Raven Mills, Inc.* 852 F. Supp. at 1547. Plaintiff has failed to establish any irreparable injury in the instant action.

### C. THE HARM SUFFERED BY TAC2 IN THE EVENT OF AN INJUNCTION EXCEEDS ANY HARM TO PLAINTIFF.

TAC2 has already been damaged by the allegations brought against it in this lawsuit and the delays caused by 3M to its order. (D.E. 20, 33) If TAC2 is subject to a broad preliminary injunction such as the one requested by Plaintiff that would prohibit TAC2 from offering for sale or selling genuine 3M products it would essentially result in putting TAC2 out of business. So long as TAC2 is not knowingly offering or selling counterfeit or non-existent products there is no harm to Plaintiff.

### D. AN INJUNCTION AGAINST TAC2 DOES NOT SERVE THE PUBLIC INTEREST

All parties agree and understand that 3M N95 masks are in high demand and are needed by health care facilities and the government to help protect the health care workers on the front lines. If TAC2 is able to secure genuine 3M masks for private health care facilities or the government at a price that these parties are willing to pay, then preventing TAC2 from selling and delivering these products does a disservice to the public. Just because 3M is the manufacturer of the products does not mean it can control the secondary market or every sale of its product. Any such control would constitute a monopoly, is illegal, and does not serve the public interest.

### V. CONCLUSION

Plaintiff has failed to establish entitlement to the overly broad preliminary injunction it seeks in this action. Plaintiff cannot establish the likelihood of success on the merits of its trademark and unfair competition claims as set out above. Therefore, for all of the foregoing reasons, Plaintiff's Motion should be denied by this Court.

Dated: May 22, 2020

/s/ Amy E. Stoll
Amy E. Stoll, Esquire
Florida Bar No. 150959
Richard C. Alvarez, Esquire
Florida Bar No. 031615
Older Lundy & Alvarez
1000 West Cass Street
Tampa, Florida 33606
Phone: (813) 254-8998
Fax: (813) 839-4411
astoll@olalaw.com
jblanchette@olalaw.com

## **CERTIFICATE OF SERVICE**

DEFENDANT'S COUNSEL HEREBY CERTIFIES that on May 22, 2020, a true and correct copy of this Notice was electronically filed with the Clerk of Court using the CM/ECF system so that notice will be sent to all counsel of record.

/s/ Amy E. Stoll
Amy E. Stoll, Esquire
Florida Bar No. 150959